INTERNATIONAL DATA BANK, LTD., Appellant,

v.

Eugene ZEPKIN; Harold Grossman; Southern Investment Corporation, a Virginia corporation; BIC, Ltd., a Virginia corporation, Appellees.

No. 86–2052.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 11, 1986.

Decided Feb. 20, 1987.

**150**

Robert E. Brown (Howell, Daugherty, Brown & Lawrence, Norfolk, Va., on brief), for appellant.

Beth H. Stann (H. Vincent Conway, Jr., Downing, Conway & Beale, Newport News, Va., on brief), for appellees.

Before CHAPMAN and WILKINSON, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

WILKINSON, Circuit Judge:

Eugene Zepkin and Harold Grossman issued a stock prospectus for their new firm, International Data Bank (IDB). The outside investors, who have since ousted Zepkin and Grossman, now control IDB. IDB has sued Zepkin and Grossman, claiming that the prospectus included a fraudulent statement in violation of federal securities laws. IDB seeks treble damages and attorneys' fees for civil violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68.

The district court dismissed the suit. It reasoned that IDB lacked standing to bring a RICO claim based on securities fraud because it had not bought or sold any securities. We hold that IDB lacked standing to sue and that it cannot point to a "pattern of racketeering activity" as required by the RICO statute. We therefore affirm.

I.

Plaintiff IDB is a corporation headquartered in Newport News, Virginia. It was formed in 1983 to provide financial and administrative services to companies engaged in international trade. Zepkin and Grossman obtained $500,000 for IDB from ten outside investors. In the offering prospectus for IDB, Zepkin and Grossman stated that they had advanced $116,685 in start-up costs and equipment to the firm through their partnership (defendant BIC) and their corporation (defendant SIC). They also stated in the prospectus that the funds would later be repaid by the firm.

IDB repaid the funds that Zepkin and Grossman claimed. IDB, now the plaintiff-appellant, alleges that Zepkin and Grossman falsified the extent of the advance. In some instances, according to IDB, Zepkin and Grossman claimed reimbursement for the cost of equipment that they never bought. In other instances, they claimed reimbursement for the cost of new equipment when they actually bought used equipment. IDB contends that at least

$75,000 of the $116,685 "advance" was claimed fraudulently.

## II.

We begin with a brief discussion of the pertinent provisions of the RICO statute. Under 18 U.S.C. § 1964(c), a private right of action is permitted under RICO to "[a]ny person injured in his business or property by reason of a violation" of the statute. The violations are described, in turn, by 18 U.S.C. § 1962. In this case, IDB alleges a violation of § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The term "racketeering activity" is in turn defined by § 1961(1)(D) to include "any offense involving ... fraud in the sale of securities." Under § 1961(5), a plaintiff must, at a minimum, allege two acts of racketeering to plead a "pattern of racketeering activity." This requirement is commonly known as the predicate act requirement; that is, the plaintiff must allege at least two predicate acts to form a RICO claim. A plaintiff bringing a civil RICO claim for securities fraud must allege two acts that constitute securities fraud offenses.

IDB has properly alleged that Zepkin and Grossman committed two such acts in the course of soliciting funds for the company. In particular, they have alleged violations of SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, which prohibits fraud "in connection with the purchase or sale of any security." On appeal, IDB has also alleged violations of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). Because the claim under § 17(a) was not presented to the district court, however, we will consider only the alleged 10b–5 violations here.

Beyond the initial requirement of two predicate acts, a plaintiff must meet a number of additional requirements. In this case, IDB has failed two of them: it has not suffered a legally cognizable *injury* from the predicate acts of securities fraud, and the predicate acts do not constitute a *pattern* of racketeering activity.

## III.

■ The facts alleged by IDB may afford it a common law claim based on fraud, breach of contract, or perhaps another cause of action, for the recovery of the improper reimbursement. A cause of action for violation of federal securities laws is another matter. The outside investors may well have such an action. Because IDB's injury did not result from its purchase or sale of securities, it has suffered no injury cognizable under Rule 10b–5. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Because IDB based its RICO claim on a Rule 10b–5 predicate offense, the district court properly applied the standing requirements of that Rule in dismissing the action.*

IDB did not purchase any of its own stock. Nor is fraud claimed by the corporation in its capacity as a seller. Although IDB did sell its stock in the initial offering, it has not alleged that it was injured by virtue of the sale or that it was fraudulently induced to sell its stock. Rather, it complains that it was induced to repay Zep-

---

* It is questionable whether § 17(a) would confer additional rights to a plaintiff in a civil RICO action beyond those conferred by Rule 10b–5.

First, the standing rules of § 17(a) may differ from those of Rule 10b–5. The question of whether standing is available under § 17(a) to both purchasers and non-purchasers or to purchasers only has divided the district courts of this circuit. *Compare Reid v. Madison*, 438 F.Supp. 332, 335 (E.D.Va.1977) (purchasers and non-purchasers) *with Oliver v. Bostetter*, 426 F.Supp. 1082, 1087 (D.Md.1977) (purchasers only).

Second, the language of § 1961(1)(D) of the RICO statute differs from that of either Rule 10b–5 or § 17(a). RICO refers only to "fraud in the *sale* of securities," while Rule 10b–5 prohibits fraud *"in connection with* the *purchase or sale"* of securities and § 17(a) prohibits fraud "in the *offer or sale"* of securities.

Because this case involves only a Rule 10b–5 claim, we do not decide these issues here.

kin and Grossman—a fraud that occurred after the stock offering had already taken place. Thus, IDB brings its claim as neither a purchaser nor a seller.

In *Blue Chip Stamps*, the Supreme Court held that only actual purchasers or sellers of securities have standing to bring a private action for Rule 10b–5 violations. Parties who are affected by a securities fraud only indirectly cannot sue under 10b–5. Appellants argue, however, that the phrase "[a]ny person injured" in § 1964(c) of RICO confers standing in securities fraud cases upon broad categories of nontraditional plaintiffs. The question before us, then, is whether Congress intended the purchaser-seller restriction to apply to a RICO claim based on 10b–5 violations.

We begin, of course, with the language of the statute. Here, as in many cases, we are left to infer as best we can the legislative intent. Congress did not explicitly address whether RICO actions involving securities fraud were to be limited to injured buyers and injured sellers of securities. The statutory language describing the predicate offense—"fraud in the sale of securities"—is, however, narrow and suggests the pivotal role of the actual sales transaction. One commentator has noted that "in section 1961(1)(D), no mention is made of 'purchasers,' which are included in rule 10b–5, nor of 'offers,' which are included in section 17(a)." MacIntosh, *Racketeer Influenced and Corrupt Organization Act: Powerful New Tool of the Defrauded Securities Plaintiff*, 31 Kan.L.Rev. 7, 35 (1982). Nor is the broad rule 10b–5 phrase "in connection with," which has been read to impose liability on some non-seller defendants, *Norris v. Wirtz*, 719 F.2d 256 (7th Cir.1983), used in 18 U.S.C. § 1961(1)(D). In contrast, Congress did use the broader language "any offense involving fraud connected with a case under title 11 [bankruptcy]" in the same part of the RICO statute.

■ It is wise not to make overmuch of statutory omissions. Congress is presumed, however, to choose its words with care and is presumed not to be oblivious to the intensely semantical character of litiga-

tion in the field of securities enactments. We need not decide whether the term "fraud in the sale of securities" in 18 U.S.C. § 1961(1)(D) merely incorporates by reference the standing provisions of securities fraud statutes or whether it also limits of its own force RICO standing to the actual parties to a sale. Under either formulation, where the RICO plaintiff pleads a 10b–5 predicate offense, standing would be limited to the actual purchaser or seller of securities. *See* MacIntosh, *supra*, at 37.

Congress, moreover, did not write the RICO statute in a vacuum. It enacted this legislation in 1970 against the developed backdrop of almost forty years of federal securities law. As the Supreme Court later noted in *Blue Chip Stamps*, "virtually all lower federal courts" facing the issue in "hundreds" of decisions spanning "the past quarter century" had reaffirmed the conclusion of *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.1952) that the plaintiff class in "§ 10(b) and Rule 10b–5 private damage actions is limited to purchasers and sellers of securities." 421 U.S. at 731–32, 95 S.Ct. at 1923. If Congress had intended the drastic result of overturning this consensus, it surely would have done so in a more explicit way. Other 10b–5 requirements, such as scienter, reliance, materiality, and causation, are apparently incorporated in the predicate offense. It is difficult to discern why Congress would then have insisted on statutory inconsistency solely with respect to "injury."

■ The possibility that Congress meant to allow plaintiffs to circumvent the requirements of *Birnbaum* seems even more remote when we consider the general context in which RICO provides a private cause of action for securities fraud. The civil remedies provided by § 1964(c) cover not just securities fraud, but *all* the offenses enumerated in § 1961(1). These include a broad spectrum of state and federal crimes, such as murder, kidnapping, arson, robbery, drug distribution, bribery, pension fund embezzlement, and obstruction of justice. We doubt that Congress meant, when it buried securities fraud among all these

offenses, to overturn the rule established in *Birnbaum*. Where a predicate offense already has a well-developed private right of action under federal law, we think the better view is that Congress meant for RICO simply to expand the range of *remedies* by allowing for treble damages and attorneys' fees, rather than to summarily overturn the settled law.

The rationales for allowing only purchasers and sellers to bring private claims for securities fraud were explained by the Court in *Blue Chip Stamps*. Here, as in *Blue Chip Stamps*, those practical factors "are entitled to a good deal of weight." 421 U.S. at 749, 95 S.Ct. at 1932. Though the right of action under § 10(b) of the 1934 Securities Act was judicially implied and the right of action under § 1964(c) of RICO is express, many elements of the RICO action, including that of standing, have not been clearly legislated. With respect to those elements, we think it proper—and indeed prudent—to consult the practical considerations that *Blue Chip Stamps* addressed at such length; those considerations pertain not just to Rule 10b–5, but to all securities fraud actions.

The Court in *Blue Chip Stamps* noted that securities litigation presents "a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general." 421 U.S. at 739, 95 S.Ct. at 1927. That danger is increased, not diminished, by the presence of a treble damages provision in § 1964(c) of the RICO statute. The larger potential recovery under RICO enhances the "settlement value" and "nuisance" potential of a securities fraud action—both dangers to which the *Blue Chip Stamps* Court adverted. 421 U.S. at 740–43, 95 S.Ct. at 1927–29. This circuit has been especially sensitive to the disruption of business activity by lawsuits designed to poison the atmosphere with accusations of fraud and thereby "exploit meritless claims for their settlement value." *Gurley v. Documation*, 674 F.2d 253, 257 (4th Cir.1982) (seller who allegedly was induced by fraud to delay sale of securities lacks standing to sue under Rule 10b–5 because the later sale was not part of the same transaction in which the fraud occurred).

The problems of proof noted in *Blue Chip Stamps* would also inhere in plaintiff's proposed rule of RICO standing. Non-sellers and non-buyers of securities would be advancing their own largely non-contradictable oral testimony about a non-event, namely their failure to sell or purchase stock. Problems of proof with respect to causation would be endless. The virtue of the *Blue Chip Stamps* rule is "that it limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates." In the absence of such a doctrine, "bystanders to the securities marketing process could await developments on the sidelines without risk, claiming that inaccuracies in disclosure caused non-selling in a falling market and that unduly pessimistic predictions by the issuer followed by a rising market caused them to allow retrospectively golden opportunities to pass." 421 U.S. at 747, 95 S.Ct. at 1931.

If parties who did not buy or sell were permitted to sue for securities fraud, whether under Rule 10b–5 or under RICO, the dangers that the Court addressed in *Blue Chip Stamps* would be magnified. Many "injuries" might be alleged. If a corporation were harmed by a securities fraud, the door might be open for civil actions by the corporation's customers, employees, and contractors. Anyone connected with the firm in any capacity might allege that he has suffered indirect harm as a result of the firm's loss. Even were courts to require a direct rather than a remote injury, as in treble damage antitrust actions, *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the requirement would be an elusive one to apply.

Contrary to IDB's contentions, the application of traditional standing requirements for securities fraud does not violate the Supreme Court's holding in *Sedima, S.P. R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In *Sedi-*

*ma*, the Court rejected various restrictions on civil RICO actions, including the imposition of a distinct "racketeering injury" requirement. The district court here did not, as IDB suggests, impose such a requirement by applying *Blue Chip Stamps*. Also, the district court did not impose a restriction analogous to the "competitive injury" restriction that the *Sedima* Court rejected. 105 S.Ct. at 3286 n. 15. The *Sedima* Court rejected an across-the-board restriction, derived from the antitrust laws, that would apply to RICO claims no matter what the predicate offenses. Here, the district court imposed a well-established standing requirement that applies to the specific offense of securities fraud.

## IV.

█ Even if plaintiff were properly before this court, we find a further deficiency in its RICO claim. The fraudulent acts alleged by IDB were part of a single, limited scheme to defraud. They do not amount to a "pattern" of such activity by Zepkin and Grossman. We therefore hold, as an independent ground of decision, that IDB has not alleged a "pattern of racketeering activity" under 18 U.S.C. §§ 1961(5) and 1962(c).

According to § 1961(5), the term "'pattern of racketeering activity' requires at least two acts of racketeering activity." In *Sedima*, the Supreme Court noted that two acts of racketeering are necessary to form a pattern under this definition, but might not be sufficient. "Indeed, in common parlance two of anything do not generally form a 'pattern.'" 105 S.Ct. at 3285 n. 14. The Court then recounted the legislative history of the pattern requirement to support this view. *Id.* Later in the opinion, the Court returned to the subject of the pattern requirement; it suggested that the expansive use of civil RICO has resulted partly from "the failure of Congress and the courts to develop a meaningful concept of 'pattern.'" 105 S.Ct. at 3287. Justice Powell, in his dissenting opinion, also suggested a strict adherence to the pattern requirement. 105 S.Ct. at 3289–90. Because the majority and dissenting opinions

both offer important guidance to lower courts in elaborating the pattern requirement, we will limit our discussion of cases here to those decided after *Sedima*.

The Organized Crime Control Act of 1969, which included RICO, was accompanied by a Senate report which explained the intent of the pattern requirement. The report, issued by the Senate Committee on the Judiciary, explained that

> The concept of "pattern" is essential to the operation of the statute. One isolated "racketeering activity" was thought insufficient to trigger the remedies provided under the proposed chapter, largely because the net would be too large and the remedies disproportionate to the gravity of the offense. The target of [RICO] is thus not sporadic activity. The infiltration of legitimate businesses normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern.

S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969).

The Court in *Sedima*, quoting a portion of this passage, emphasized the elements of "continuity plus relationship." 105 S.Ct. at 3285 n. 14. To spell out this requirement, one might say that the predicate acts must be related and must be part of a continuous criminal endeavor. In the present case, the element of relationship between the predicate acts is undoubtably present, but the element of continuity is absent.

Without attempting an all-embracing definition of the pattern requirement, we believe that a single, limited fraudulent scheme, such as the misleading prospectus in this case, is not of itself sufficient to satisfy § 1961(5). Nor do we find "a pattern" in the fact that one allegedly misleading prospectus reached the hands of ten investors. If the commission of two or more "acts" to perpetrate a single fraud were held to satisfy the RICO statute, then every fraud would constitute "a pattern of racketeering activity." It will be the unusual fraud that does not enlist the mails

and wires in its service at least twice. Such an interpretation would thus eliminate the pattern requirement altogether. As the Seventh Circuit stated in *Lipin Enterprises v. Lee*, 803 F.2d 322, 324 (7th Cir.1986):

> The pattern requirement was intended to limit RICO to those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes. ABA Section of Corporation, Banking & Business Law, *Report of the Ad Hoc Civil RICO Task Force* 203–08 (1985). RICO is not 'aimed at the isolated offender.' *Sedima*, 105 S.Ct. at 3285 n. 14 (quoting 116 Cong.Rec. 35, 193 (1970) (statement of Rep. Poff)). There must be some indication of a 'threat of continuing activity' by the defendants, not just one instance of fraud with a single victim. S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969).

Courts have devised various tests after *Sedima* to determine whether a pattern of racketeering activity exists. Some courts have refused to find a RICO "pattern" in a single fraudulent scheme. In *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986), the defendants committed various acts in furtherance of a single scheme to steal liquid petroleum gas from plaintiff's pipeline. The court declined to find a pattern of racketeering activity, noting that defendants' actions "comprised one continuing scheme to convert gas from Superior Oil's pipeline. There was no proof that [defendants] had ever done these activities in the past and there was no proof that they were engaged in other criminal activities elsewhere." 785 F.2d at 257. In both *Lipin Enterprises* and *Superior Oil*, the pattern requirement was read so that civil RICO would target offenders who engage repeatedly in racketeering activities. *See also Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986); *Medallion TV Enterprises v. SelecTV of California*, 627 F.Supp. 1290, 1295–97 (C.D.Cal.1986); *Allington v. Carpenter*, 619 F.Supp. 474, 477–78 (C.D.Cal.1985).

Other courts have looked to the number of predicate offenses. In *Bank of Amer-ica v. Touche Ross & Co.*, 782 F.2d 966 (11th Cir.1986), five banks alleged that they had been fraudulently induced to extend credit to a company. The banks sued under civil RICO, alleging nine acts of mail and wire fraud over a period of three years. The Court of Appeals reversed the district court's dismissal of the suit. The appeals court stated that the predicate acts were part of a single scheme, but held that the pattern requirement was nonetheless satisfied. *Id.* at 971.

In our view, no mechanical test can determine the existence of a RICO pattern. The number of predicate acts is not an appropriate litmus test, as the perpetration of numerous acts of mail and wire fraud "may be no indication of the requisite continuity of the underlying fraudulent scheme." *Lipin Enterprises*, 803 F.2d at 325 (Cudahy, J., concurring). The focus of *Superior Oil* on the scope of the criminal activity is proper, but the "one continuing scheme" test enunciated in that case will not always hold true. As the *Lipin Enterprises* court noted, such a test may "allow a large, continuous scheme to escape the enhanced penalties of RICO liability." 803 F.2d at 324.

What constitutes a RICO pattern is thus a matter of criminal dimension and degree. To allow a "pattern of racketeering" to flow from a single, limited scheme such as this one would undermine Congress's intent that RICO serve as a weapon against ongoing unlawful activities whose scope and persistence pose a special threat to social well-being. The present case does not involve a "pattern of racketeering," but ordinary claims of fraud best left to "the state common law of frauds" and to "well-established federal remedial provisions." *Sedima*, 105 S.Ct. at 3293 (Marshall, J., dissenting).

Because IDB lacks standing to bring a RICO claim based on a predicate offense of securities fraud, and because IDB has alleged no pattern of racketeering activity, the judgment of the district court is

AFFIRMED.