**EASTERN PUBLISHING AND ADVERTISING, INC., (A Close Corporation), t/a "Armed Forces News", Plaintiff–Appellant,**

v.

**CHESAPEAKE PUBLISHING AND ADVERTISING, INC., (A Close Corporation), t/a "The Military News"; Karen A. Horn; Kimberly J. Horn; Carol Whitney Ansell; Della Lemmings; Alfred E. Clasing, III; Raymond J. Cannoles; Louise Martins, Defendants–Appellees.**

No. 87–1520.

United States Court of Appeals, Fourth Circuit.

Argued June 29, 1987.

Decided Oct. 16, 1987.

Rehearing and Rehearing En Banc Denied Nov. 19, 1987.

William Edward Seekford, Towson, Md., for plaintiff-appellant.

John Joseph Kuchno (Henry R. Lord, Piper & Marbury, Charles Martinez, Eccleston & Seidler, Baltimore, Md., on brief), for defendants-appellees.

Before PHILLIPS, ERVIN and WILKINSON, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Appellant Eastern Publishing and Advertising, Inc. (Eastern), appeals the Rule 12(b)(6) dismissal of its claims against a competing publisher, Chesapeake Publishing and Advertising, Inc. (Chesapeake), former Eastern employees, and former associates in the law firm that represents Eastern, alleging copyright infringement and RICO and antitrust violations. We affirm the dismissal of the copyright claim because Eastern failed to attach the requisite notice to the advertisements and to the issues of its newspaper, "Armed Forces News," on which it claims copyrights. We also affirm dismissal of the civil RICO and antitrust claims on the grounds relied upon by the district court.

I

Eastern publishes a quarterly newspaper, "Armed Forces News," which is directed to military personnel and their dependents and which consists of original advertising and publicly available government press releases. Chesapeake publishes a competing newspaper, "The Military News." Claiming that its publication is entitled to copyright protection as a "compilation" under 17 U.S.C. §§ 101, 103, even though the government publications that make up the newspaper are not themselves copyrightable, 17 U.S.C. § 101, Eastern claimed that Chesapeake infringed its copyrights in two issues of the "Armed Forces News," Volume V, Number III and Volume VI, Number IV. Eastern also claimed that Chesapeake infringed valid copyrights in individual advertisements appearing in those same issues. Volume V, Number III first was published on March 22, 1986, and Volume VI, Number IV on March 27, 1986. Eastern registered copyrights in these ma-

terials on May 9 and May 20, 1986, respectively. Copyright notices appeared on subsequent issues of the publication. No copyright notices appeared on the advertisements.

Appellees Karen Horn, Kimberly Horn, Carol Ansell, and Della Lemmings were employees of Eastern until April 1986. Appellees Alfred Clasing and Raymond Cannoles, worked with the law firm retained by Eastern before formation of Chesapeake; appellee Louise Martins currently works with Clasing and Cannoles. Clasing, Cannoles, and Martin are Chesapeake directors, and Karen Horn is the company's resident agent. According to Eastern's complaint, the various named defendants were responsible for photocopying, cutting apart, and reassembling Volume V, Number III and Volume VI, Number IV of "Armed Forces News" to create and publish "The Military News." Eastern further alleged that unidentified defendants represented to Eastern's advertising customers that Chesapeake was connected to Eastern and that the customers could renew their advertisements in Eastern's publication through Chesapeake. These customer contacts were alleged to have taken place through the mails and by interstate wire and telephone transmissions on various occasions during March, April, and May 1986.

In addition to claiming that publication of "The Military News" infringed Eastern's copyrights, Eastern charged that Chesapeake's exploitation of its customers led to a decline in the number of "Armed Forces News" customers, while the number of Chesapeake's customers increased to the point that Chesapeake now controls the relevant market. Thus, according to Eastern, Chesapeake's activities have injured competition in violation of federal antitrust laws, 15 U.S.C. §§ 1–15. Eastern did not allege before the district court that any other competitor beside itself had been injured, but on appeal Eastern submits that at least three other competitors exist and that at least one of these has been injured competitively. Finally, Eastern charged Chesapeake with civil RICO violations for having committed multiple acts of mail and wire fraud in misleading Eastern's custom-

ers into publishing advertisements in "The Military News."

In ruling on appellees' 12(b)(6) motion, the district court found: (1) there was no copyright infringement because defendant's publication amounted to a recompilation of the copyrighted issues of "Armed Forces News"; (2) there was no "pattern" of racketeering activity to support the RICO claim; and (3) the facts alleged did not demonstrate the injury to competition required for an antitrust claim.

This appeal followed.

## II

■ Eastern claims copyright in two separate sets of material: (1) advertisements published in "Armed Forces News"; and (2) two particular issues of the newspaper, Volume V, Number III and Volume VI, Number IV. To succeed on a copyright claim, one asserting copyright protection must have registered the copyright, 17 U.S.C. § 411(a); *Conan Properties, Inc. v. Mattel, Inc.*, 601 F.Supp. 1179, 1182 (S.D.N.Y.1984); *International Trade Management, Inc. v. United States*, 553 F.Supp. 402, 1 Cl.Ct. 39 (1982), and must also have attached notice of copyright on all publicly distributed copies of the protected item. 17 U.S.C. § 401(a); *e.g., M. Kramer Manufacturing Co. v. Andrews*, 783 F.2d 421, 443 (4th Cir.1986).

■ No notice appeared on the individual advertisements. 17 U.S.C. § 404(a) permits a copyright notice on a compilation of work as a whole to cover individual parts of the whole, unless the individual part is an advertisement for the benefit of someone other than the holder of the copyright in the entire collective work. A newspaper claiming copyright ownership in an advertisement prepared for another must give specific and separate notice of its copyright in the advertisement. *See Canfield v. Ponchatoula Times*, 759 F.2d 493 (5th Cir. 1985). Therefore, even if notice of copyright was affixed properly to the newspaper to cover the publication as a whole, that notice would not cover the individual

advertisements, and there can be no copyright infringement as to them.

■ There also was no notice on the two issues of "Armed Forces News" for which copyrights were registered on May 9 and May 20, 1986. Assuming these issues were copyrightable as "compilations," which are selections or arrangements of even uncopyrightable material in an original way, *see Southern Bell Telephone and Telegraph Co. v. Associated Telephone Directory Publishers,* 756 F.2d 801, 809 (11th Cir. 1985), the registered copyrights lend no protection to Eastern unless the failure to place notice upon them is excused under 17 U.S.C. § 405(a). Section 405(a)(2) excuses omission of notice if

> registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered.

Eastern, having registered copyrights in the March 22 and March 27 issues on May 9 and May 20, and having placed general copyright notices on subsequent issues of the "Armed Forces News," claims that its copyright is preserved by the § 405(a)(2) excuse.

■ The district court declined, in dictum, to excuse the failure to give notice under § 405(a)(2) because it believed this section of the Copyright Act "is most clearly applicable to products identical to one another which are in continuous production," citing *Original Appalachian Artworks, Inc. v. Toy Loft,* 684 F.2d 821, 826–27 (11th Cir.1982) (dolls); *Shapiro & Son Bedspread Corp. v. Royal Mills Associates,* 568 F.Supp. 972, 976–77 (S.D.N.Y. 1983) (bedspreads); *Beacon Looms, Inc. v. S. Lichtenberg & Co.,* 552 F.Supp. 1305 (S.D.N.Y.1982) (curtains); *but cf. Canfield,* 759 F.2d 493 (considering the § 405(a)(2) exception in a case involving newspapers). Our research reveals only one case in which § 405(a)(2) has been invoked to preserve copyright protection for an article that is not in constant production, *Werlin v. The Reader's Digest Association,* 528 F.Supp. 451, 461 (S.D.N.Y.1981), and we decline to follow its lead on the facts of this case. We therefore agree with the district court that § 405(a)(2) does not apply unless there is continuous production of identical products, and for reasons that follow, we think that was not shown here.

Here, Eastern has claimed a copyright in two specific issues of its publication, each of which necessarily had not only a limited period of distribution but also a very limited lifespan in the hands of a consumer. Subsequent notice placed upon later, different issues of "Armed Forces News" is ineffective to alert others that copyrights cover earlier issues. It is also impossible for Eastern to attach notice to the issues in question and thereby to comply literally with the second prong of § 405(a)(2).

Cases considering the related question whether one claiming protection under § 405(a)(2) must place notices of copyright on products already distributed to customers or only on products still in the hands of a retail seller support this conclusion. *See, e.g., M. Kramer,* 783 F.2d at 444; *Donald Frederick Evans and Associates, Inc. v. Continental Homes,* 785 F.2d 897, 911 n. 22 (11th Cir.1986). Whatever their particular conclusions, these cases, like those construing the "reasonable effort" required by § 405(a)(2), proceed on the premise that products protectible under § 405(a)(2) must have continued distribution, at least from a retailer, as well as continued use in the hands of a consumer or retailer. That simply is not the case with respect to the discrete issues of newspapers for which protection is sought here. These products obviously do not have those essential aspects.

Because the savings provision of § 405(a)(2) does not apply here, Eastern's failure to give notice is not excused, and the two publications of "Armed Forces News" do not merit copyright protection.

### III

■ We also agree with the district court's dismissal of Eastern's civil RICO claim. The essential elements of this type

of RICO claim are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The racketeering activities upon which Eastern's claim is based are mail and wire fraud allegedly committed when appellees solicited appellant's advertising customers, misrepresenting that they were working on behalf of the "Armed Forces News." The district court found that these instances of mail and wire fraud did not establish the requisite "pattern" for a successful RICO claim.

We think decision here is controlled by our interpretation and application of the "pattern" requirement in *International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149 (4th Cir.1987). In that case, drawing on the Supreme Court's recognition in *Sedima*, 473 U.S. 479, 105 S.Ct. 3275, that more careful adherence by the courts to this requirement might properly limit civil RICO claims to their proper scope, we concluded that "no mechanical test can determine the existence of a RICO pattern," and that the question is necessarily a "matter of criminal dimension and degree" to be decided on a case-by-case basis. *Zepkin*, 812 F.2d at 155. The touchstone for assessing this we thought was revealed by the legislative history's emphasis that what was targeted was "not sporadic activity" but continuity or the threat of continuity of racketeering activity. *Id.* at 154. On this basis, we concluded that as a general proposition "a single, limited fraudulent scheme," notwithstanding it might include the requisite minimal number of sufficiently related predicate acts would not constitute the "pattern" of racketeering activity contemplated by Congress. *Id.* Such a single, limited scheme we thought was not the kind of "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Id.* While we recognized that a scheme properly considered to be a "single" one might by virtue of its very size and continuity meet the test, we thought the typical fraudulent schemes, limited in occurrence, in scope, and in purpose, that have been the tradi-

tional subjects of state tort law were not intended to be swept into RICO's reach by Congress. *Id.*

On this basis we concluded that a RICO complaint by investors alleging as predicate acts two violations of the securities laws in connection with the sale of securities did not sufficiently allege a pattern of RICO activity. We held that the conduct charged was instead merely that of a "single, limited scheme" to defraud. Though it met the technical requirements of a sufficient number of predicate acts sufficiently related to each other, it failed to charge the kind and degree of continuous engagement in criminal conduct required to constitute a RICO "pattern."

We think exactly the same analysis applies to the conduct charged here. The predicate mail and wire fraud acts charged are sufficient in number. They are sufficiently related in allegedly furthering Chesapeake's efforts to gain a competitive edge over Eastern. But in the end all that results is a single, non-recurring scheme to defraud a single entity by taking unfair competitive advantage in a quite narrow business context. There is no inference that the scheme embodies a threat of continued like activity in the future. Just as the scheme alleged in *Zepkin* was found wanting in the required degree of continuity of conduct, so is that here. The complaint fails to allege a RICO pattern of racketeering activity. *See Medallion TV Enterprises v. SELECTV of California, Inc.*, 627 F.Supp. 1290, 1296–97 (C.D.Cal. 1986) (series of calls and letters over a two-month period constitutes a single criminal episode, not a "pattern of activity"); *Phelps v. Wichita Eagle–Beacon*, 632 F.Supp. 1164, 1171–72 (D.Kan.1986) (several telephone conversations and mailings in furtherance of single ongoing scheme to harm plaintiff not a RICO "pattern"); *Grant v. Union Bank*, 629 F.Supp. 570, 578 (D.Utah 1986) (multiple mail and wire conviction in furtherance of single fraudulent loan scheme not a RICO pattern); *cf. Temporaries, Inc. v. Maryland National Bank*, 638 F.Supp. 118 (D.Md.1986) (recognizing that single open-ended scheme might

be so extensive in potential scope as to constitute pattern); *see also HMK Corp. v. Walsey*, 828 F.2d 1071 (4th Cir.1987) (applying *Zepkin* to find no pattern in single scheme extending over long period and involving many predicate acts aimed at corrupting political processes to gain competitive advantage).

## IV

■ Eastern's antitrust claim is based upon the defendants' acts of copyright infringement and appropriation of confidential business information. The district court held this not to be the type of conduct at which the antitrust laws are aimed, and we agree. *See Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1283 (7th Cir.1983). Moreover, the antitrust laws are inapposite here because the only damage is to Eastern as a *competitor;* there is no alleged injury to *competition* in the relevant market. *See id.*, at 1284–85; *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Eastern complains on appeal that in finding no injury to competition, the district court erroneously believed that there were no competitors in the market other than Eastern and Chesapeake. The court noted that before the creation of Chesapeake, there was only one market entity, Eastern, and that if events transpire as Eastern predicts, there will only be one market entity, Chesapeake. Therefore, there was no injury to competition. Eastern now avers for the first time that there are other competitors who are also harmed by Chesapeake's activities. We decline to take into account these other alleged competitors because their existence and injury were not averred in the complaint nor in any way suggested to the district court.

AFFIRMED.