**Paull ANDERSON, Plaintiff–Appellee,**

v.

**FOUNDATION FOR ADVANCEMENT, EDUCATION AND EMPLOYMENT OF AMERICAN INDIANS, an Eleemosynary Corporation; H. Nicholas Johnson, Defendants–Appellants,**

**Edward M. Mezvinsky, Defendant.**

No. 96–2221.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1998.

Decided Sept. 10, 1998.

**ARGUED**: William Thomas Dillard, Ritchie, Fels & Dillard, P.C., Knoxville, Tennessee, for Appellants. Christen Wood Burkholder, Christen W. Burkholder, P.C.,

Bristol, Virginia, for Appellee. **ON BRIEF:** Robert W. Ritchie, Ritchie, Fels & Dillard, P.C., Knoxville, Tennessee, for Appellants.

Affirmed in part, vacated in part, and remanded by published opinion. Judge ERVIN wrote the opinion, in which Judge DIANA GRIBBON MOTZ and Senior Judge BEEZER joined.

## OPINION

ERVIN, Circuit Judge:

The appellants in this case are the Foundation for Advancement, Education and Employment of American Indians and the Foundation's president, H. Nicholas Johnson (we will refer to the appellants collectively as the "Foundation," except where necessary to distinguish any separate actions by Johnson). The Foundation challenges the district court's grant of a default judgment against it under Rule 37 of the Federal Rules of Civil Procedure for abuse of the discovery process. The Foundation further claims that the complaint was invalid for failing to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1861 (1994) *et seq.* Finally, the Foundation claims that the district court erred in the manner and amount in which it assessed damages.

We hold that the district court did not abuse its discretion in granting a default judgment under Rule 37, though we hold that the judgment should not have been based on Anderson's RICO claim. We do find, however, that the district court erred in its calculation of damages and therefore we remand for a hearing on damages in accordance with this opinion.

## I.

In January of 1992, Paull Anderson, the plaintiff-appellee, entered into a "finders-fee" contract with the Foundation, which is a nonprofit organization under section 501(c)(3) of the Internal Revenue Code. The contract provided that the Foundation would pay Anderson 10 percent of the value of any property he persuaded people to donate to the Foundation.

The Foundation never paid Anderson for the work he claims he did on its behalf. Among other transactions, Anderson claims he mediated a deal between the owners of a tree farm and the Foundation. Once the Foundation owned the tree farm, it further promised to pay Anderson 10 percent of the value of any trees Anderson sold on behalf of the Foundation. He also claims to have arranged the donation of a former Unisys plant, worth six million dollars, to the Foundation.

Anderson sued the Foundation and its principals, H. Nicholas Johnson and Edward Mezvinsky (Mezvinsky was dismissed from the case for lack of personal jurisdiction) in district court, alleging civil RICO violations, fraud, and breach of contract. He claimed the Foundation engaged in a pattern of activity that involved persuading people to donate properties, or to work to obtain the donation of properties, without fulfilling the terms of the donation agreements. He also claimed the Foundation and its principals made promises that they had no intention of keeping in order to induce him to enter into contracts.

The Foundation moved to dismiss for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). It argued that Anderson had failed to allege a "pattern of racketeering activity" sufficient to support the civil RICO claim and had failed to allege fraud with particularity under Fed.R.Civ.P. 9(b). The district court denied its motion, finding that Anderson had pled sufficiently to withstand a motion to dismiss under Rule 12(b)(6) on both counts.

The parties conducted discovery under the supervision of Magistrate Judge Kinser. The Foundation was extremely dilatory in responding to both interrogatories and requests for documents. A short summary of the procedural history follows:

After various preliminary skirmishes regarding service of process and responsive pleadings, the parties began discovery. On February 6, 1995, Anderson first submitted interrogatories and document production requests to the Foundation. The Foundation

objected even to the most ordinary questions as "unduly burdensome or harassing" and responded "to be supplied" to almost all questions to which it did not object. On June 13, Magistrate Judge Kinser entered a partial scheduling order directing that the Foundation provide answers to interrogatories and document requests for all questions and requests to which it had not previously objected no later than June 26. The Foundation filed its interrogatory responses on June 26, and its document production responses on June 27. Those responses were still incomplete.

The parties dueled over discovery throughout the rest of the summer. The Foundation never supplied the requested documents, but renewed its objections to the pleadings (though its motion to dismiss under Rule 12(b)(6) had already been denied), complaining that the documents requested in discovery might incriminate them in racketeering activities.

In September, Magistrate Judge Kinser clarified the scope of discovery, ruling that the Foundation did not have to provide its tax returns but that it had to supply financial documents dating back to 1980. In October, the magistrate judge ordered the discovery provided by Anderson sealed and made unavailable to the Foundation until the Foundation had responded with some discovery of its own. Anderson alleges that this sanction was largely ineffective, due to discovery in a parallel action filed by Anderson against Mezvinsky in Tennessee, through which Anderson's discovery was apparently made available to the Foundation. In any event, the sanction did not enhance the Foundation's responsiveness.

Though the Foundation did not object to the sealing of the documents, it objected under Federal Rule of Civil Procedure 72 to the scope of the discovery ordered by the magistrate. The district court heard arguments on the Rule 72 motion in January, 1996. After the hearing, the district court modified the scope of the discovery order to include documents dating from 1985, rather than 1980. He then ordered the Foundation to respond to the outstanding discovery requests within 45 days of his January 10 order.

The 45-day period elapsed and, in violation of the January order, the Foundation had failed to respond to the discovery requests. On March 6, Anderson filed a motion for a default judgment under Rule 37, citing the Foundation's recalcitrance in the face of the court's orders, its rehashing of its 12(b)(6) arguments on every possible occasion, and the frequent changes in its testimony about disputed factual matters (including occasions when Mr. Johnson apparently outright lied). On April 8, the day the district court heard argument on the Rule 37 motion, the Foundation filed its response to the interrogatories that had not been stricken, and supplied three boxes of documents. At the hearing, the Foundation's new counsel stated that he had underestimated the time it would take to respond to the discovery orders and that he had yet to review more documents and information. According to Anderson, the boxes that were provided were sealed with labels addressing them to one of the Foundation's prior counsel (the Foundation and Mr. Johnson changed counsel numerous times throughout the proceedings), and therefore seemed to have been available for production for several months. Anderson's counsel also noted the existence of other documents that the Foundation had failed to provide but which Anderson had obtained through other means.

Anderson objected to the discovery responses as inadequate and renewed his motion for Rule 37 sanctions. The district court entered an order on May 1, which directed the Foundation to provide certain financial documents and warned it that failure to comply within 15 days would result in the imposition of a default judgment. The district court further ordered the Foundation to pay Anderson the reasonable costs of his attorneys' fees in seeking the Rule 37 sanctions.

The Foundation failed to respond during the 15-day time period, but on May 17 counsel filed a motion requesting an extension of time due, in part, to representations by the attorney with respect to a family medical emergency that had called him out of town. The district court granted this request for an

extension and gave the Foundation until May 31 to provide the requested materials.

The May 31 deadline came and went with no response from the Foundation. Anderson renewed his request for Rule 37 sanctions, and the district court granted it, entering judgment in the amount of $1,108,708.80, which comprised the commission fees Anderson alleged he had earned in the complaint. The district court then trebled the damages and awarded an additional $1,000,000 in punitive damages. It also awarded Anderson $500,000 in attorneys' fees, which amount was subsequently reduced to $46,528.98.

The Foundation moved to vacate the default judgment, stating that it had supplied all documents that it possessed or that were readily available to it. It also disputed that the discovery order extended to 1985, despite the clear language of the district court's January 10 order. The district court heard argument on the matter on July 15, then held the record open for 10 days to receive any documents the parties cared to enter. At that time, Johnson submitted an affidavit saying he had turned over all documents in his possession or reasonably available to him.

On August 7, the district court affirmed its entry of default judgment. The Foundation appeals from that order.

## II.

The district court had diversity jurisdiction under 28 U.S.C. § 1332. The district court entered a final order on August 7, 1996. We therefore properly exercise jurisdiction under 28 U.S.C. § 1291.

## III.

The Foundation challenges the entry of the default judgment, the adequacy of the pleadings on RICO, and the district court's calculation of damages.

## A.

 The Foundation contends that the district court's decision to enter a default judgment is not supported by record evidence. It contends it complied with the mag-

istrate judge's discovery orders to the best of its ability and did not act with bad faith. Further, the Foundation argues, Anderson was not prejudiced by any alleged delays.

 We review the district court's grant of sanctions under Rule 37, including the imposition of a default judgment, for abuse of discretion. *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 505–06 (4th Cir.1977). The Fourth Circuit has developed a four-part test for a district court to use when determining what sanctions to impose under Rule 37. The court must determine (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective. *Id.* at 503–05.

As a preliminary matter, we note that this is not a case in which the district court imposed a default judgment without warning. The district court warned the Foundation in no uncertain terms on both May 1 and again on May 21 that failure to comply with the court's order would result in a default judgment. *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir.1995) (district court must make threat of entry of default judgment clear).

An examination of the *Wilson* factors as applied to this case does not indicate any abuse of discretion by the district court. The district court's opinion adequately supports a conclusion that the Foundation acted in bad faith. The Foundation stonewalled on discovery from the inception of the lawsuit. The district court noted the Foundation's inconsistent answers as to why it missed discovery deadlines and its continued failure to miss the deadlines despite adequate warnings from the court. The Foundation now contends that its failures were due to changes in attorneys and simple attorney error. The Foundation also asserts that it told opposing counsel sometime after April 23 that no further documents existed, though it could not document that conversation. The Foundation completely fails to explain why it filed only a belated response to the court's May 1 discovery order and no re-

sponse whatsoever to the court's May 15 order.

The district court also addressed the question of prejudice to Anderson. In addition to the expense, annoyance, and delay of prosecuting his case, Anderson's claim became junior to that of another claimant suing the Foundation in Tennessee state court due to the delay in prosecuting Anderson's Virginia case.

The Foundation also contends that any delay did not prejudice Anderson because it had no documents to give him and any delay was therefore harmless. The notion that the Foundation had no financial records to produce is difficult to believe, especially because the Foundation refused to turn over documents at the commencement of discovery not because they did not exist but because the documents might implicate the defendants in racketeering activity. Moreover, the sooner Anderson knew of the absence of documents, the sooner he could have attempted to obtain them from other sources.

The deterrence and lesser sanctions factors are somewhat intertwined. First, the continued abuses cited by the court as evidence of the Foundation's bad faith demanded some form of punishment. Lesser sanctions did not deter such behavior. *See, e.g., Mutual Fed. Sav. and Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 94 (4th Cir.1989) (entry of default judgment "unmistakable message to them and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future.") The district court noted that the first sanction— the entry of the protective order on Anderson's discovery until the Foundation should supply discovery—was somewhat undercut by the sharing of documents in the Tennessee state court case. The Foundation denies that the protective order was a sanction because it was entered into with the consent of Foundation counsel, but this argument is a red herring. The court's rationale for the order's imposition was clearly punitive. The court further noted the lesser sanction of attorneys' fees it ordered the Foundation to pay for the expenses in filing the Rule 37 motion, and the Foundation's failure to pay those fees. In addition, the

court noted the explicit warnings given the Foundation on May 1 and May 21, and the Foundation's complete disregard of both warnings. Thus, entry of a default judgment was warranted both as a deterrent and as a last-resort sanction following the Foundation's continued disregard of prior warnings.

Though we affirm the district court's entry of default judgment, we vacate so much of it as rests on Anderson's RICO claim, for the reasons set forth below.

B.

The Foundation claims that entry of the default judgment was invalid because the complaint on which it rests fails to state a claim on which relief can be granted for a RICO violation. The Foundation raised this same argument to the district court on several occasions, but the district court steadfastly ruled that Anderson had pled adequately to be entitled to proceed.

■ When reviewing a complaint to determine whether it states a valid cause of action, we take all allegations as admitted and examine whether the plaintiff can prove any set of facts that would entitle him to relief. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Federal "notice" pleading standards require that the complaint be read liberally in favor of the plaintiff. Fed.R.Civ.P. 8; *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ To state a claim under civil RICO, Anderson must allege at least two acts of racketeering that form a pattern of racketeering activity. 18 U.S.C. § 1961(5). Alleging two of these "predicate" acts is not in itself sufficient to satisfy the "pattern of racketeering" requirement; rather, a plaintiff must allege a continuing pattern and a relationship among the defendant's activities showing they had the same or similar purposes. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Continuity may be established by showing that "predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* at 242, 109 S.Ct. 2893. The relationship criterion may be satisfied by showing that the criminal acts

"have the same or similar purposes, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. 2893. These criteria are not always easily applied and depend on the facts of each particular case. *International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149, 155 (4th Cir.1987)(no mechanical test can determine the existence of a RICO pattern).

■ The predicate acts supporting Anderson's RICO claim are instances of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Though Anderson has alleged sufficient predicate acts required to state a claim under RICO, he must also meet the relationship and continuity requirements as illuminated in *H.J. Inc.*

■ We do not believe Anderson's complaint satisfies RICO's "pattern" requirement. The complaint outlines the Foundation's failure to pay Anderson commissions owed to him with respect to two properties, and then describes a Kentucky scheme unrelated to Anderson that did not involve the non-payment of commissions to a fund raiser operating on a contract. Though Anderson alleged more than the two minimum predicate acts required to state a RICO claim, "[i]t is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or 'arranged.'" 492 U.S. at 238, 109 S.Ct. 2893. We are especially cautious when the predicate acts involved are mail and wire fraud: "[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice." *Zepkin,* 812 F.2d at 154–55. The district court's conclusion that the pattern alleged is "the desire to obtain money or property by false or fraudulent pretenses," J.A. at 107, is not enough to distinguish Anderson's claim from an ordinary fraud claim better prosecuted under state law. Anderson does not allege that the predicate acts bear such relationship to each other or to any external organizing principle to support a civil RICO claim.

■ Further, under Fourth Circuit law, Anderson fails to allege a sufficient "threat" of continuity as required by the statute. *Id.*

at 242, 109 S.Ct. 2893; *Menasco, Inc. v. Wasserman,* 886 F.2d 681, 684 (4th Cir.1989) (acts must "constitute 'ongoing unlawful activity whose scope and persistence pose a special threat to social well-being.'") (quoting *Zepkin,* 812 F.2d at 155). Anderson alleges only that the defendants' activities amount to a "regular way of conducting their affairs and threaten future criminal activity." J.A. at 21. Though continuity may be established by an allegation that predicate acts or offenses are part of an ongoing entity's regular way of doing business, *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. 2893, we do not believe that the use of the telephone and mail services to defraud Anderson with respect to the two properties evidences "ongoing unlawful activity whose scope and persistence pose a special threat to social well-being." *Menasco,* 886 F.2d at 681.

Anderson's complaint does not state a claim for civil RICO and the district court therefore erred to the extent it entered a default judgment on that basis. We have disposed of the RICO claim; we note that the Foundation did not address on appeal whether Anderson's separate fraud count alleged fraud with particularity sufficient to satisfy the requirements of Federal Rule of Civil Procedure 9(b). We therefore hold that the Foundation has waived its right to challenge the adequacy of Anderson's complaint as to fraud.

### C.

Our holding that Anderson failed to state a valid claim under civil RICO necessarily influences our review of the district court's award of damages. Without holding a hearing, the district court awarded $1,108.708.80 in what it termed "principal" damages— $225,000 under the terms of the Brokerage Agreement and $883,008.80 under the terms of the Finder's Fee Agreement, which included a commission for the tree farm and for the Unisys plant. The district court then determined that those damages resulted from a RICO violation and trebled them to arrive at a total of $3,326,126.40. In addition, the court awarded attorneys' fees of $500,000 (which were subsequently reduced to $46,528.98) and additional punitive dam-

ages of $1,000,000, though without specifying to which count the punitive damages should apply.

■ Because the RICO claim was the primary underpinning for the district court's damages award, we think it best in the circumstances of this case to vacate the award of damages and remand to the district court for a hearing on damages. We do, of course, recognize that in some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing. *See Mutual Fed. Savings and Loan Ass'n,* 872 F.2d at 91 (over $8 million in damages awarded without a hearing). We note for the district court's guidance that in the briefs on appeal and at oral argument counsel for the Foundation conceded that the values attributable to the tree farm and the former Unisys plant were accurately set forth in the complaint.

■ Our determination that Anderson failed to state a claim under RICO moots the question of whether treble damages may properly be imposed in addition to any punitive damages. Though Anderson's independent fraud claim could provide a basis for the imposition of punitive damages, we note that Anderson has pled fraud in the inception of a contract, a difficult claim to prove. Further, we note that Virginia law requires that punitive damages be proportional to the compensatory damages awarded in a particular case. *Johnson v. Hugo's Skateway,* 974 F.2d 1408, 1418 (4th Cir.1992). Virginia law also caps punitive damages at $350,000. Va.Code Ann. § 8.01–38.1 (Michie 1997).

### IV.

We affirm the district court's entry of a default judgment against the Foundation and Johnson, though we vacate so much of the judgment as was based on Anderson's civil RICO claim. We vacate the district court's award of damages and remand for a hearing on the issue in accordance with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.*