36 F.3d 1094
 RICO Bus.Disp.Guide 8651
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
TUDOR ASSOCIATES, LTD., II, A Nebraska Limited Partnership,
by and through its Trustee, Joseph N. Callaway,
Plaintiff-Appellant,
and
Joseph N. CALLAWAY, Trustee for Tudor Associates, Ltd., II, Plaintiff,
v.
AJ & AJ SERVICING, INCORPORATED, a New Jersey Corporation;
E. J. Realty Management Corporation, a New Jersey
Corporation; Robert Jacobs; Garden National Properties,
Incorporated, a New Jersey Corporation; Alan Jacobs,
Defendants-Appellees.
TUDOR ASSOCIATES, LTD., II, a Nebraska Limited Partnership,
by and through its Trustee, Joseph N. Callaway,
Plaintiff-Appellee,
and
Joseph N. CALLAWAY, Trustee for Tudor Associates, Ltd., II, Plaintiff,
v.
AJ & AJ SERVICING, INCORPORATED, a New Jersey Corporation;
Robert Jacobs, Defendants-Appellants,
and
E. J. Realty Management Corporation, a New Jersey
Corporation; Robert Jacobs; Garden National
Properties, Incorporated, a New Jersey
Corporation; Alan Jacobs, Defendants.
 Nos. 93-2294, 93-2326.
 United States Court of Appeals, Fourth Circuit.
 Sept. 20, 1994.
Argued June 7, 1994.
Decided Sept. 20, 1994.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. Franklin T. Dupree, Jr., Senior District Judge. (CA-91-300-CIV-5-D)
 ARGUED: R. Stuart Huff, LAW OFFICES OF R. STUART HUFF, Coral Gables, Florida, for Appellant.
 E. D. Gaskins, Jr., EVERETT, GASKINS, HANCOCK & STEVENS, Raleigh, North Carolina, for Appellees.
 ON BRIEF: Mark L. Mallios, LAW OFFICES OF R.STUART HUFF, Coral Gables, Florida; Joseph N. Callaway, II, BATTLE, WINSLOW, SCOTT & WILEY, P.A., Rocky Mount, North Carolina; Irvin P. Breedlove, Jr., STUBBS, COLE, BREEDLOVE, PRENTIS & BIGGS, Durham, North Carolina, for Appellant.
 Katherine A. O'Connor, Robert H. Gourley, Jr., EVERETT, GASKINS, HANCOCK & STEVENS, Raleigh, North Carolina, for Appellees.
 E.D.N.C.
 AFFIRMED IN PART AND REVERSED IN PART.
 Before ERVIN, Chief Judge, MICHAEL, Circuit Judge, and JACKSON, United States District Judge for the 6350 35 8 Eastern District of Virginia, sitting by designation.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Tudor Associates, Ltd., II, ("Tudor") is a debtor in the United States Bankruptcy Court for the Eastern District of North Carolina. This suit arises out of the sale in 1979 of certain Tudor assets in a transaction involving Executive Management Trustees, Inc. ("EMT") and AJ & AJ Servicing, Inc. ("AJ"). Tudor filed a suit against EMT and AJ in bankruptcy court in 1983, alleging that the transaction was fraudulent. The bankruptcy court entered judgment in favor of Tudor in 1988, granting Tudor a one-half interest in certain mortgages from the 1979 deal. The court found that AJ had acquired the other half interest in the mortgages as a bona fide purchaser. AJ was ordered by the court to pay the money due Tudor from its interest in the mortgages as AJ collected the monthly payments.
 
 
 2
 Dissatisfied with AJ's performance, Tudor filed its complaint in this diversity action on June 7, 1991 in the United States District Court for the Eastern District of North Carolina. Following an amendment to the complaint in September 1992, the claims against AJ include breach of fiduciary duty, breach of contract, unfair and deceptive trade practices, conversion, fraud on the court, and RICO. The district court granted summary judgment in favor of AJ on all claims as to any liability for acts occurring prior to the bankruptcy court decision of September 14, 1988. The court also granted summary judgment on the RICO and fraud on the court claims.
 
 
 3
 Following trial in June 1993, the jury returned a verdict for Tudor against AJ in the liability phase and found compensatory damages in the amount of $529,696.50 and punitive damages in the amount of $7million. The district court granted judgment as a matter of law in favor of AJ on the claims for conversion, breach of fiduciary duty, unfair trade practices, and punitive damages. In sum, only the breach of contract verdict and the compensatory damage award were allowed to stand. Tudor appeals the decision of the district court. For the reasons set forth below, we affirm in part and reverse in part.
 
 I.
 
 4
 In 1979, Tudor was a debtor in bankruptcy. Its sole assets were four rental properties located in North Carolina. The bankruptcy court approved the sale of these properties to EMT. EMT then simultaneously deeded the properties to three limited partnerships. EMT financed its purchases from Tudor with wraparound mortgages totalling approximately $20 million. Under this arrangement, the wraparound mortgage becomes a junior mortgage and the mortgageholder (EMT) makes payments to the senior mortgageholders (those to whom Tudor had been paying on the original mortgages) from the payments it receives on the wraparound.
 
 
 5
 Through their wholly owned corporation, AJ & AJ Servicing, Inc., Alan Jacobs, an attorney, and Robert Jacobs, an accountant, formed the three limited partnerships and brought these buyers to the deal with EMT. Alan Jacobs negotiated a "finder's fee" to be paid by EMT to AJ. The fee agreement was set forth in a series of letters between EMT and AJ. As collateral security for the fee agreement, EMT assigned a one-half interest in the mortgages to AJ. AJ was appointed as servicing agent to collect the monthly mortgage payments due from the limited partnerships, to pay itself the amount due under the fee agreement and to remit the balance to EMT. The arrangement was scheduled to end in September 1999, apparently when the wraparound mortgages would be paid in full.
 
 
 6
 In 1983, Tudor filed an action in bankruptcy court alleging that the 1979 sale was a fraud on Tudor and the bankruptcy court by EMT (through its main actor, George Osserman) and by the Jacobs. Apparently, EMT was not making the necessary payments to the senior mortgage holders. Tudor sought to have the properties returned to it free and clear of the EMT mortgages. On September 14, 1988, the bankruptcy court found fraud on the part of EMT, but found that AJ had properly acquired its interest in the mortgages. The court entered a verdict in favor of Tudor against EMT in the amount of $11.6 million with interest from 1979 and awarded Tudor an equitable lien on the one-half interest in the mortgages not assigned to AJ. The court ordered AJ to file an accounting of all mortgage payments collected, to pay any funds held on behalf on EMT to Tudor, and to make future monthly accountings of all monies collected and to pay Tudor its onehalf interest in the mortgages. When AJ failed to perform as required under the judgment, Tudor instituted this suit.
 
 II.
 
 7
 The district court granted summary judgment as to all claims for any acts occurring prior to the date of the bankruptcy court's decision, September 14, 1988. It did so on the basis of res judicata and the applicable statutes of limitations.
 
 A.
 
 8
 The district court applied res judicata, holding that all claims between Tudor and AJ arising out of the 1979 transaction up to the date of the bankruptcy court's judgment were adjudicated in that action and cannot now be relitigated.
 
 
 9
 For res judicata to apply, there must be (1) a final judgment, (2) identity of the cause of action in the former and instant suits, and (3) identity of the parties or their privies in both suits. Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir.1991).
 
 
 10
 In the bankruptcy court case, Tudor claimed fraud on the court and sought to have the 1979 transaction set aside. It sought to have title to the properties returned to it free and clear of the EMT mortgages. Tudor claimed that AJ participated in the fraud by EMT, or at least had knowledge of EMT's fraudulent scheme. The bankruptcy court found that there had indeed been fraud on the part of EMT, but that AJ had secured its interest in the deal as a bona fide purchaser. Tudor was awarded EMT's interest in the mortgages and AJ was ordered to account for all past and future collections of mortgage payments and to remit to Tudor all funds owing to EMT.
 
 
 11
 In this action, Tudor claims that AJ has breached the duty imposed on it by the bankruptcy court. That duty required AJ to account not only for prospective amounts, but to disclose and account for payments collected since 1979. AJ's duty to Tudor with respect to payments from 1979 arose with the bankruptcy court's decision in 1988. Tudor could not have litigated AJ's liability for breach of that duty in the bankruptcy court action because the duty did not then exist. There is no identity of cause of action between the 1988 suit and the instant claims. Because the second prong of the res judicata test is not met, res judicata does not apply. The district court incorrectly applied res judicata to grant summary judgment as to claims of liability for any acts occurring before September 14, 1988.
 
 B.
 
 12
 The district court also ruled that certain of Tudor's claims were partially barred by the applicable statute of limitations. The reasoning for each claim was somewhat different.
 
 
 13
 For the breach of contract claim, the district court analogized AJ's conduct to a refusal to pay on a continuation or installment contract, applying the North Carolina rule that the cause of action accrues against each installment as it becomes due. To determine the date prior to which no acts could be considered, the district court counted back three years from the date of the complaint and held that no actions prior to June 7, 1988 could be considered.
 
 
 14
 For the breach of fiduciary duty and conversion claims, the court determined that the causes of action accrued when Tudor made a demand for payments due, which AJ refused. The court determined that Tudor had made such a demand at the time of the pre-trial order issued in March 1987 by the bankruptcy court. The district court then found that it should count back three years from the date of the complaint and bar consideration of acts occurring prior to June 7, 1988. The court does not explain why, if the actions accrued in 1987 in its view, the actions would not be barred by a complaint filed more than three years later.
 
 
 15
 For the Unfair and Deceptive Trade Practices Act claim, the district court determined simply that the four-year limitations period prohibited consideration of all acts occurring prior to June 7, 1987 (four years before the filing of the complaint).
 
 
 16
 We find the court's reasoning as to each of these claims unconvincing. We hold that AJ had no duty to Tudor until that duty was imposed on it by the bankruptcy court in 1988. Furthermore, Tudor had no right to sue until this duty arose. A cause of action accrues, starting the limitations period, as soon as the right to institute and maintain a suit arises. Pierson v. Buyher, 409 S.E.2d 903, 905 (N.C.1991). Until a party has a real and vested interest in the subject matter of a lawsuit, an action will not lie. Id. at 906. Tudor's causes of action therefore arose on September 14, 1988, and none were barred at the time it filed its complaint on June 7, 1991.
 
 
 17
 AJ's duty, imposed in 1988, relates back to 1979 when AJ began collecting payments under the mortgages. Marbach v. Gnadl, 219 N.E.2d 572, 579 (Ill.App.1966) (an equitable lien, though not judicially recognized until a judgment is rendered declaring its existence, relates back to the time it was created by the conduct of the parties). The fact that the causes of action accrued in 1988 is no reason to prohibit consideration of acts occurring prior to that time. For example, in a standard breach of fiduciary duty claim, the cause of action arises when the plaintiff becomes aware of the breach. The statute of limitations begins running at that point. The jury may, and in fact must, consider the fiduciary's acts that occurred prior to the plaintiff's discovery of the misconduct. There is no basis for prohibiting consideration of events occurring prior to September 14, 1988. We reverse the district court's grant of summary judgment in favor of AJ partially barring Tudor's claims on the basis of statutes of limitations.
 
 III.
 
 18
 The district court granted summary judgment in favor of AJ on Tudor's RICO claim. Because, inexplicably, neither Tudor's complaint nor AJ's motion for summary judgment are included in the joint appendix, reviewing whether Tudor made sufficient allegations to support its RICO claim is very difficult. However, based on the nature of the conduct at issue, we hold that AJ's conduct does not support a RICO violation.
 
 
 19
 To prove a RICO violation, the plaintiff must show a pattern of racketeering activity. A pattern will be found where there is continuity of the predicate acts and a relationship of the acts indicating a common purpose. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). While there must be at least two predicate acts, something more than simply a specified number of acts is required to demonstrate a pattern. Id. at 238.
 
 
 20
 This court has held that the pattern requirement is meant "to prevent ordinary commercial fraud from being transformed into a federal RICO claim." Id. at 685. To determine if a fraudulent scheme rises to the level of a RICO violation, the court must determine its scale, duration and number of victims. Id. RICO is reserved for those schemes whose scope and persistence set them above the routine. American Bankers Ins. Co. v. First Union Nat'l Bank, 699 F.Supp. 1174, 1178 (E.D.N.C.1988). American Bankers involved injury to a credit insurer resulting from a fraudulent corporate bond program. The defendants were various financial institutions and law firms that had structured and administered the program. The court found that the ongoing program constituted a "single scheme designed to inflict a single injury on a single victim and as such, ... lack[ed] the scope and dimension necessary to form a RICO pattern." Id.
 
 
 21
 While Tudor may have alleged multiple predicate racketeering acts, AJ's reprehensible fraudulent conduct amounted to a single scheme to defraud Tudor of money due under the mortgages. Despite the fact that the scheme lasted over ten years and involved millions of dollars, it nonetheless involved a single scheme to inflict a single injury on a single victim. As such, it does not rise to the level of conduct necessary to support a RICO recovery. The district court properly granted summary judgment.
 
 IV.
 
 22
 The jury returned a verdict indicating that AJ had converted to its own use, from the revenues collected under the contract with EMT to which Tudor succeeded, money to which Tudor was entitled and had done so with gross, willful, reckless or wanton disregard for the rights of Tudor. The district court granted judgment as a matter of law in favor of AJ on this conversion claim, overturning the jury's verdict.
 
 
 23
 A grant of judgment as a matter of law is reviewed to determine whether the record as a whole, viewed in the light most favorable to the nonmoving party, presents substantial evidence opposed to the motion. Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891 (4th Cir.1980). Judgment as a matter of law should not be granted unless the evidence is so clear that reasonable people could reach no other conclusion than the one suggested by the moving party. Persinger v. Norfolk & Western R. Co., 920 F.2d 1185, 1189 (4th Cir.1990).
 
 
 24
 The district court gave three separate reasons for its grant of judgment as a matter of law on Tudor's conversion claim. First, the court determined that a separate tort must accompany a breach of contract before conversion can be found. The court based this finding on Florida and Maryland law. However, under the controlling North Carolina law, the tort of conversion is found where there has been the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Garvin v. Fayetteville, 401 S.E.2d 133, 134 (N.C.App.1991). If a jury finds those elements, it can properly find conversion without any specific finding of a separate tort. There was substantial evidence that AJ's fraudulent conduct converted Tudor's property to its own benefit. The district court erred in granting judgment as a matter of law on this reasoning.
 
 
 25
 The district court next found that conversion could not lie because Tudor's claim was based on the bankruptcy court's judgment and a judgment is not capable of being converted. North Carolina law provides that a judgment is neither goods nor a chattel and that a judgment creditor has no property interest in the judgment sufficient to support an action for its conversion. Cobb v. Cornegay, 28 N.C. 358, 359 (1846). The court in Cobb made it clear, however, that it was referring to the literal judgment in the case, the piece of paper on which the court's decision was recorded. The actual judgment was characterized as a public writing belonging to "the justice who gave it, as a public custodier, to be kept by him until drawn out of his hands by the regular requirements of the law." Id. Tudor is not suing for the conversion of the document granting it an interest in the mortgages, but for the amounts due under its equitable lien. Because those amounts can be converted, the district court's reasoning is inapposite.
 
 
 26
 The district court finally held that because Tudor has no more than an equitable lien on the mortgages, its interest is not sufficient and its conversion claim must fail. The court quotes Am.Jur.2d, "Conversion" Sec. 80 and the cases cited therein for the proposition that a mere equitable interest in personal property will not support an action for conversion. That section, however, relates principally to the type of interest an intended beneficiary has in a life insurance policy; its interest is not fixed because it has no legal right of possession of the property. Tudor has more than a mere floating equitable interest in the mortgage proceeds; the bankruptcy court judgment established Tudor's interest and required AJ to pay the proceeds to Tudor. Am.Jur.2d, "Liens" Sec. 60 recognizes that a lienholder may sue for conversion of the property on which his lien exists if it is wrongfully disposed of by the owner. The district court erred in determining that Tudor did not have an interest in the mortgages sufficient to support conversion. We reverse the district court's grant of judgment as a matter of law on Tudor's conversion claim. The jury's verdict will stand.
 
 V.
 
 27
 The district court granted judgment as a matter of law in favor of AJ on Tudor's Unfair and Deceptive Trade Practices Act claim, reversing the jury's verdict. As recognized by the district court, the jury found that AJ engaged in unlawful practices by concealing from plaintiff revenues collected in servicing the wrap around mortgages to which plaintiff was entitled by depositing such revenues in various bank accounts unknown to plaintiff; that it filed false and deceptive reports with the bankruptcy court; that it misrepresented to plaintiff his rights to revenues collected; that it misled or deceived plaintiff as to the application of revenues collected; that it concealed from plaintiff the identity and ownership of the persons and corporations to whom management fees were being paid; that it falsely represented to the plaintiff that expenses for attorney's and accounting fees were related to the operation of the properties; that it falsely represented to the plaintiff that additional management fees had been approved by the property owners; that these acts were committed by AJ in commerce; and that the acts were the proximate cause of damage to the plaintiff.
 
 
 28
 J.A. 182-83. The district court then noted that
 
 
 29
 nothing else appearing, these findings would seem to constitute unfair and deceptive trade practices under the Fair Trade Act and would justify a ruling by the court under North Carolina law that plaintiff is entitled to recover treble damages.
 
 
 30
 J.A. 183. The district court then held that judgment as a matter of law was appropriate nonetheless because under North Carolina law, a simple breach of contract does not constitute an unfair trade practice. North Carolina law also provides, however, that when accompanied by aggravating circumstances, a breach of contract may violate the Act. Garlock v. Henson, 435 S.E.2d 114, 115 (N.C.App.1993). To find such aggravating factors, the plaintiff must demonstrate deception in the formation of the contract or in the circumstances of its breach. Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir.1989). It is difficult to imagine a more clear finding by the jury of substantial aggravating factors. Although the ultimate decision of whether conduct constitutes an unfair trade practice is left to the court, id. at 534, the district court abused its discretion in not so finding here.
 
 
 31
 The district court offered two other reasons to render judgment as a matter of law on this claim. The first alternative basis is that because the court admitted evidence of acts committed by AJ prior to 1988 but instructed the jury not to consider it in determining liability, the jury must have been confused by the instruction and improperly considered the pre-1988 conduct. There is no basis in the record for this determination by the court. Substantial evidence supports the jury's verdict. Furthermore, the pre-1988 acts should not have been removed from the jury's consideration in the first place. See Section II, supra.
 
 
 32
 The court's second alternative basis for its action on the unfair trade claim was that Tudor had "access to adequate information to enable [it] to ascertain the status of [its] claims against defendants at all times." J.A. 186. Presumably, the district court is here referring to the requirement that recovery under the Act is limited to those situations where the plaintiff can show that the plaintiff detrimentally relied on defendant's statement or misrepresentation and suffered actual injury as the proximate result. Forbes v. Par Ten Group, Inc., 394 S.E.2d 643, 651 (N.C.App.1990), review denied, 402 S.E.2d 824 (N.C.1991).
 
 
 33
 The fact that Tudor was aware that AJ was involved in deceptive acts relating to its servicing of the mortgages does not preclude a finding that Tudor nonetheless relied on AJ to remit payments due. Tudor necessarily relied on AJ to perform as required; that Tudor knew of AJ's deception does not make it any less deceptive or unfair. We reverse the district court's grant of judgment as a matter of law on the unfair and deceptive trade practices claim. The jury's verdict will stand.
 
 VI.
 
 34
 The jury returned a verdict finding that AJ owed a fiduciary duty to Tudor by virtue of its role as servicing agent and that AJ breached that duty. The district court found that "these findings are contrary to the weight of the evidence and the applicable law, and they will be set aside." J.A. 181. The district court used the wrong standard in granting judgment as a matter of law on this claim. Judgment as a matter of law shall be granted only if there is no substantial evidence to support the verdict. Mattison v. Dallas Carrier Corp., 947 F.2d 95, 107 (4th Cir.1991). The trial court used the standard that would permit it to grant a new trial, i.e., that the verdict was against the great weight of the evidence. Id. Because there is substantial evidence in the record that AJ owed a fiduciary duty to Tudor, the jury's verdict will stand.
 
 
 35
 The district court also found that there could be no fiduciary duty in this case because there existed no relationship between Tudor and AJ of special faith, confidence and trust. J.A. 181. The court found that because AJ and Tudor were constantly at odds with each other and because Tudor clearly didn't trust AJ, there could be no fiduciary relationship. The court erred in making this finding.
 
 
 36
 North Carolina provides that a fiduciary relationship "exists in all cases where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith." Curl v. Key, 316 S.E.2d 272, 275 (N.C.1984). The duty arises in certain legal relationships, including that of principal and agent, where the agent is charged with the entire management of the principal's affairs. McNeill v. McNeill, 25 S.E.2d 615, 617 (N.C.1943). The fact that a debtor may not trust his trustee or a child may not trust her guardian ad litem does not destroy the fiduciary's obligation to act in the best interests of its charge. The fiduciary responsibility arises from the special position the fiduciary is in.
 
 
 37
 AJ is in the special position of managing Tudor's one half interest in mortgages worth over $20 million. AJ has been ordered by the court to account for and service the mortgages on Tudor's behalf. There was substantial evidence that AJ is required in equity and good conscience to act in good faith. The district court erred in overturning the jury verdict for Tudor on its breach of fiduciary duty claim.
 
 VII.
 
 38
 The district court denied Tudor's motion for leave to amend its complaint to assert the illegality of the finder's fee. The denial of leave to amend must be based on a showing of prejudice, bad faith, futility or dilatoriness associated with the motion. Sandcrest Outpatient Services, P.A. v. Cumberland County Hospital System, Inc., 853 F.2d 1139, 1148 (4th Cir.1988).
 
 
 39
 Tudor's argument alleges that the fee agreement underlying AJ's interest in the mortgages is invalid and that AJ's interest is therefore invalid. The district court denied leave to amend on the basis of futility. Because the bankruptcy court had already determined in a proceeding involving both Tudor and AJ that AJ acquired its interest in the mortgages as a bona fide purchaser, that issue cannot be relitigated. The identical issue was necessarily determined in a prior action in which the parties were identical to, or in privity with, the parties in the instant action. The issue is therefore collaterally estopped from relitigation. State v. O'Rourke, 442 S.E.2d 137, 138 (N.C.App.1994). The district court properly denied leave to amend the complaint.
 
 VIII.
 
 40
 Tudor argues that its lien granted by the bankruptcy court is a superior lien to AJ's rights under the fee agreement with EMT. Tudor argues that the district court incorrectly denied summary judgment on its motion for declaratory judgment that AJ is limited to one-half of the proceeds from the mortgage payments.
 
 
 41
 The fee agreement provides that in some years, AJ is entitled to more than half of the mortgage proceeds. As security for the fee agreement, EMT assigned one-half interest in the mortgages to AJ. AJ's interest in the mortgages secures its right to all the fees due under the fee agreement. Because its security interest in one-half of the mortgages does not limit its right to the proceeds to one half; AJ has a right to whatever is due under the fee agreement. Tudor, as successor to EMT, is entitled to the revenues owing EMT on the basis of its one-half interest in the mortgages. In effect, Tudor is bound by the fee agreement between AJ and EMT. The district court committed no error in this regard.
 
 IX.
 
 42
 In the damages phase of the trial, the jury returned a verdict awarding Tudor punitive damages in the amount of $7 million. The district court vacated that award as unconstitutional and alternatively, should that ruling be overturned on appeal, ordered a new trial on punitive damages.
 
 
 43
 The Supreme Court has made it clear that the jury may not be given unbridled discretion in determining punitive damages. Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1 (1991). Post-judgment review by the trial court may, however, protect a jury award. Id. at 22. Interpreting Haslip, this court has determined that to protect the constitutionality of a punitive damages award, four so-called Haslip factors must be taken into consideration: (1) the relationship of the damages to the harm caused, (2) other penalties for the same conduct, (3) improper profits and plaintiff's costs, and (4) limitations based on defendant's ability to pay. Mattison, 947 F.2d at 110. While these issues may be considered by the trial court in a post-trial review in state court proceedings, they must be presented to the jury for prejudgment consideration in federal proceedings. Id. at 109.
 
 
 44
 In Johnson v. Hugo's Skateway, 974 F.2d 1408 (4th Cir.1992), this court determined that a district court, sitting in a state in which the highest court has not yet ruled on its punitive damage procedure in light of the U.S. Supreme Court's pronouncement in Haslip, should predict what the state court would do to ensure the constitutionality of its state scheme. In Hugo's Skateway, the district court determined that the state would require consideration of the Haslip factors, and therefore required that the factors be included in the jury charge in the federal proceeding.
 
 
 45
 In the case at bar, Tudor requested the Haslip instruction be given to the jury. North Carolina's Supreme Court had not yet ruled on the correct procedure and so the district court was bound by Hugo's Skateway to predict what North Carolina courts would do in light of Haslip. The determination would have been well-informed by the fact that North Carolina's judicial conference had already published a new jury instruction on punitive damages incorporating the Haslip criteria. N.C. Pattern Instruction 810.01. Tudor requested this instruction. AJ objected to its use, arguing that there was no basis in North Carolina law for using the new instruction. The district court agreed with AJ and refused to give the instruction. Upon the jury's award of $7 million, the court determined that the jury had been improperly instructed and that the award was therefore unconstitutional.
 
 
 46
 The conduct of the defense in this case presents a clear example of invited error. It is "a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." Crockett v. Uniroyal, Inc., 772 F.2d 1524, 1530 (11th Cir.1985). AJ cannot argue against the proper instruction at trial and then argue to set aside the award because the proper instruction was not given.
 
 
 47
 The district court found that alternatively, a new trial should be given on the issue of punitive damages because the award was so grossly excessive as to shock the conscience. In making that determination, the court was required to balance competing interests to determine that a new trial was necessary to avoid a miscarriage of justice. Goldsmith v. Diamond Shamrock Corp., 767 F.2d 411, 416 (8th Cir.1985). The district court's grant of a new trial is reviewed for abuse of discretion. Mattison, 947 F.2d at 108.
 
 The district court ruled
 
 48
 that having been found guilty of conduct warranting the assessment of punitive damages against it by a competent tribunal, a defendant should not thereafter be liable for punitive damages in another action involving the same conduct.
 
 
 49
 Finally, there is a feature of the punitive damages procedure which, if it does not render it constitutionally suspect, at least serves to make it morally wrong, and that is the fact that the proceeds of a punitive damages award go not into the public coffers as do all other fines and forfeitures but into the pockets of the successful plaintiff and his attorney.
 
 
 50
 * * * *
 
 
 51
 This court, of course, will continue to apply the law as best it can be discerned for the sometimes bewildering decisions currently covering the punitive damages field. Were it writing on a clean slate it would have no hesitance in ruling unconstitutional the award of punitive damages in the present case and would simply enter judgment for the defendants on this issue. Instead, the court must state that the award of $7,000,000.00 as punitive damages in this case was shocking to the court's conscience, and in the event the court's ruling on the conversion count is reversed on appeal it must be set aside as grossly excessive and contrary to the weight of the evidence.
 
 
 52
 J.A. 199, 201. The trial court's admitted prejudice against punitive damages for any private plaintiff makes it unlikely that the court actually weighed competing interests to determine that a new trial was necessary to avoid a miscarriage of justice. We find that the district court abused its discretion in ordering a new trial. The punitive damages award will stand.
 
 X.
 
 53
 For the reasons set forth above, we hold as follows: (1) we reverse the district court's grant of summary judgment as to all claims for any acts occurring prior to the date of the bankruptcy court's decision, September 14, 1988; (2) we affirm the district court's grant of summary judgment in favor of AJ on Tudor's RICO claim; (3) we reverse the district court's grant of judgment as a matter of law in favor of AJ on the conversion claim, the Unfair and Deceptive Trade Practices Act claim, and the breach of fiduciary duty claim; (4) we affirm the district court's denial of Tudor's motion for leave to amend its complaint to assert the illegality of the finder's fee and its motion for declaratory judgment that AJ is limited to one-half of the proceeds from the mortgage payments; and (5) we reinstate the jury's punitive damage award of $7 million in favor of Tudor.